Varía, per Harper, Chancellor.
The jury having found that the deed in question was made without the knowledge of the intended husband, and it being certain that it was made in contemplation of marriage, and after an actual engagement to that effect, it only remains to inquire, whether such a deed can be supported. The remarks of Chancellor Johnston, in the decree of 1839, perhaps comprehend all that is necessary to be said on the subject; but as the subject is a new one in our Courts, it-has been thought proper to make a further investigation of authorities. Of the general rule, that a voluntary conveyance made by a wife, pending a treaty of marriage, and with a view to it, without the knowledge of. the intended husband, is void as a fraud on the marital rights, has' never, I believe, been questioned. And though it is said by Lord Chancellor Brougham, in St. George vs. Wake, 1 Mylne and Keene, 610, that the doctrine rests more upon dicta than actual decision, he himself does not question it. The case of Carleton vs. Millington, 2 Vern. 17, where, in contemplation of marriage, the wife conveyed to trustees, in trust, to dispose of the property as she should direct; and that of Goddard vs. Snow, Russ. 485, where, ten months before the marriage, but still with a view to it, the wife had conveyed in like manner; and, as, it is said, that of Havord vs. Hooker, 2 Ch. R. 81, seem to be decisions, and expressly in point. It is recognized in Ball vs. Montgomery, 2 Ves. jr. 191; in Strathmore vs. Bowes,id. 22 ; and indeed, in all the cases which have been supposed to introduce a modification of it. The modification contended for, is, that if the object of the conveyance is to make a provision for the children of a former marriage, this will be supported. The law is found so expressed in some of the elementary books; and dicta to that effect may, perhaps, be found in some of the reported cases. But all these, I believe, are derived from the case of Hunt vs. Matthews, 1 Vern. 408. In that case, according to the original report, the wife had assigned over the greater part of her estate, in trust, for the children of her former marriage ; and the chancellor is reported to have said, that she might, with a good conscience, provide for children of the first marriage. Bui Mr. Cox, in the notes to his edition, corrects the re- *250 port from the register’s book, and states, that the assignment was known to the second husband before the marriage. Blithe’s case, Freem. 91, has been relied upon. There the wife assigned a lease of £3, annual value, in trust, for herself for life, with remainder to her daughter. It was said by the Court, that, being a thing of small value, and there appearing no marriage treaty, nor any contemplation of this lease, the deed might be supported. In that case, too, the wife had received the income for her life, and, after her death, the daughter, during the life of the husband, and the bill was brought by his administrator, to set the conveyance aside, and the Court might very well have thought that the acquiescence of the husband was evidence of its fairness, and that his representative should not impugn it. In King vs. Cotton, 2 P. Wms. 674, it was in evidence, that the conveyance was made before the treaty of marriage, in the most public- manner — at an entertainment given to tenants — and though the Court speaks of the • mean circumstances of the husband, and of his not offering to make any - settlement, yet, certainly, these circumstances were not necessary to the decision. In Strathmore vs. Bowes, though executed a very short time before the marriage, the settlement was before the treaty of marriage- with the defendant. It was made in contemplation of marriage with a former suitor, with his knowledge and consent. In St. George vs. Wake, the Chancellor decided upon the ground that there was no concealment, and that the deed was probably known to the husband. He argues, however, that in such cases the question must always be of actual fraud; that the cases seem to authorize the taking of all the circumstances into consideration; the circumstances of the husband, as to pecuniary means, (fee.; but the one thing needful is fraud; fraudulent concealment. No other case besides this, furnishes any ground for the exception to the general rule,which is supposed to exist, when the conveyance is to provide for children of a former marriage,' rather ■ than for a stranger. These dicta, or this reasoning of Lord Brougham, seem to afford the only ground for what is said by Mr. Justice Story, in his commentary on equity jurisprudence; that though the secret conveyance of the woman, in favor *251 of one for whom she was under moral obligation to provide, will be void, yet “ if she only reasonably provides for her children by a former marriage, under circumstances of good faith, it would be otherwise.” It is to this case, and that of King vs. Cotton, that he refers for authority. As to what is said in our own reported cases, Lyles vs. Lyles, and Jones vs. Cole, they can hardly be called dicta. ' 'Laying down the general law; that a voluntary conveyance made, pending a marriage treaty, without the knowledge of the husband, is void, they add — unless it be to provide for children. This can hardly be said to express an opinion that there is such an exception in favor of children. In Terry vs. Hopkins, 1 Hill Ch. 1, Chancellor BeSaussure questions the doctrine, and quotes the reasoning of Roper, in his law of husband and wife ; that if the conveyance is to be avoided, on the ground of fraud on the husband, it is equally fraudulent, whether in favor of children or any one else. But certainly no case or dictum supports the notion, that every conveyance making provision for the children of a former marriage, shall be valid; and it would be difficult to find a stronger case against the deed than in this instance. It was made after the marriage engagement, and a month before the actual marriage, privately, at the house of her father, with the knowledge only of kindred and inmates ; it was of her whole property, to a child already well provided for, and the husband had a a fortune adequate to her own. Under these circum,stan-ces, it is impossible that the deed should stand, and such is the judgment of the Court. My individual opinion would be, that there is no distinction, whether the conveyance be to children or to a stranger, and that it would introduce great uncertainty into the law, if we should .set about to determine, according to the circumstances of every case, what is, or is not, a reasonable provision for children. A reasonable provision is that of which the intended husband will approve. It is, in every case, in the power of the intended wife to communicate her intention to provide for her children to the husband; and if it be in fact reasonable, and he should refuse his consent, and break off the treaty upon this provocation, she will have reason to congratulate herself. To leave it in the power of wo *252 men to make such secret dispositions on the eve of marriage would.be injurious, not a benefit to them. Nothing' would be more likely to create conjugal unhappiness after the marriage, of which we have an unfortunate instance in the present case. It is the familiar law, that the husband is regarded as a purchaser of the wife’s property, and that marriage is a valuable consideration. As said by the Chancellor, in Strathmore vs. Bowes, “ the law conveys the marital rights, because it charges him with all the bur-thens which are the consideration he pays for them.” In this case, the defendant, since his marriage, has paid off a debt contracted by his wife before her marriage, for part of the property included in her conveyance. Now, suppose a person should convey, for a pecuniary consideration, property of which he had before conveyed a part to his children, could there be any question of the fraud ? A person in debt making a voluntary conveyance, is presumed to intend fraud on his creditors ; and his moral obligation to provide for his children, will not cure the transaction, if the conveyance be to them. As said by Roper, if the secret conveyance of the wife be void on the score of fraud on the husband, it can make no difference whether it be in favor of children or any one else.. It is hardly necessary to say, that the Court cannot afford the relief prayed for by the second ground of appeal. With respect to the 3d ground, and the injunction which has been granted in the case, it may be well to explain that they are entirely misconceived. The practice of granting injunctions against the removal of property from the State, which has sometimes obtained, is entirely inefficient- and irregular. An injunction is for the purpose of restraining proceedings in another Court within the State, or to restrain some act in relation to landed property, which cannot be removed from the State ; and if the party disobeys, the Court may always find and punish him by its process. If there be ground to apprehend that a party will not abide a decree of the Court, the proper process to compel him to do so, is the writ of ne exeat. If, upon the hearing, there appear sufficient grounds to apprehend that a tenant for life will remove the property from the State, the Court will compel him to give security for its forthcoming at the termination *253 of the life estate. But if the Court should merely enjoin him not to remove the property, he might remove himself and the property too, and entirely evade the jurisdiction. With regard to the propriety of compelling the tenant for life to give security in the present case, we concur with' the Chancellors ;°but if any such intention should hereafter appear, the complainant will be at liberty to apply for a ne exeat. The 4th ground is sustained. It was certainly no violation of the duty of a guardian to obtain the judgment of the Court on au instrument, in which his ward had, apparently, so material an interest; and it would be hard and unusual to burden him with costs. By paying costs out of the corpus of the property, they will b.e borne by the tenant for life, and the complainants entitled in remainder, according to their respective interests. This is ordered accordingly, and m other respects the decrees are confirmed.
WM. HARPER.